**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Michael L Ruiz, | No. CV-23-02090-PHX-DWL |
| Plaintiff, | **ORDER** |
| v. | |
| Magellan Financial & Insurance Services, | |
| Defendant. | |

In this action under Title VII and 42 U.S.C. § 1981, Plaintiff Michael Ruiz ("Plaintiff") is suing his former employer, Defendant Magellan Financial & Insurance Services ("Defendant"), under the theory that his alleged demotion and subsequent termination were due to his race and national origin and that he was also subjected to a hostile work environment. Now pending is Defendant's motion for a directed verdict and/or for sanctions regarding "economic damages." (Doc. 103.) For the reasons that follow, the motion is denied.

## RELEVANT PROCEDURAL BACKGROUND

On October 5, 2023, Plaintiff initiated this action. (Doc. 1.) The fact discovery deadline was September 20, 2024, and dispositive motions were due by October 25, 2024. (Doc. 15.) Plaintiff last supplemented his Rule 26 initial disclosures on September 20, 2024. (Doc. 105 at 9.)

On October 25, 2024, Defendant filed a motion for summary judgment (Doc. 55) and a motion to exclude the testimony of Plaintiff's expert, Michael Stokes ("Stokes") (Doc. 56). On June 30, 2025, the Court granted the summary judgment motion in part and

denied it in part.  (Doc. 67.)  On July 10, 2025, the Court denied the motion to exclude Stokes ("the *Daubert* Order").  (Doc. 68.)

On July 31, 2025, the Court set a trial date of May 19, 2026.  (Doc. 71.)

On April 30, 2026, the parties filed their joint proposed final pretrial order. (Doc. 94.)  On May 6, 2026, the Court held the final pretrial conference (Doc. 98) and adopted the proposed final pretrial order (Doc. 99).

On May 13, 2026—one week after the final pretrial conference and just six days before trial—Defendant filed the pending motion for a directed verdict and/or sanctions. (Doc. 103.)  Plaintiff responded that same day.  (Doc. 106.)  On May 14, 2026, Defendant filed its reply.  (Doc. 109.)  Neither party requested oral argument.

**DISCUSSION**

I.      The Parties' Arguments

Defendant argues that Plaintiff "has not disclosed his damages" as required by Rule 26(a)(1)(A)(iii).  (Doc. 103 at 1.)  In support, Defendant relies on the *Daubert* Order, which observed that "[a]lthough [Plaintiff] has at times during this case appeared to characterize [Stokes's report] as showing his 'economic' damages, the Report itself does not purport to calculate [Plaintiff's] litigation 'damages'" and that Plaintiff "clarifie[d] in his response brief that the Report does not purport to establish his damages and will simply 'be helpful to the jury to determine [Plaintiff's] damages.'"  (*Id.* at 2, quoting Doc. 68 at 10-11, emphases omitted.)  Defendant also argues that Stokes's "economic calculation does not represent damages" because "it is only a counterfactual projection of alleged economic benefits had Plaintiff remained employed by [Defendant]" and that "[t]he Court recognized that this was the case in its" *Daubert* Order.  (*Id.* at 4.)  According to Defendant, the "core" of the pending motion "is that although put on notice by the Court's July 10, 2025 Order, Plaintiff has never disclosed the other necessary elements for disclosure of a computation of damages."  (*Id.* at 2.)  Defendant argues that "[t]he parties are prepared to go to trial," "[b]ut Plaintiff still has never made a valid damages disclosure."  (*Id.*, emphasis omitted.) Specifically, Defendant argues that "[i]n Plaintiff's last disclosure . . . Plaintiff still claims

$3,729,088.00—an amount derived from Mr. Stokes's expert opinion—as his damages," even though the Court previously "recognized, based on Mr. Stoke's own testimony, that this amount does not represent Plaintiff's damages." (*Id.*) Defendant thus argues that "the Court should exclude evidence intended to prove Plaintiff's economic damages" and "enter a directed verdict/sanctions on Plaintiff's economic damages claims on his claims for relief." (*Id.*)[1] Defendant also notes "that without more pieces—due to non-disclosure—Mr. Stoke's opinion—being only 'one piece'—will be confusing to the jury and prejudicial to Defendant." (*Id.* at 3.) Defendant further emphasizes that Plaintiff's disclosures state that his damages "will be calculated by an economic damages expert and supplemented, which never occurred." (*Id.*, cleaned up.) Defendant argues that Plaintiff's "failure to both (a) provide an actual computation of damages, and (b) identify the evidence on which such computation is based is significantly and materially prejudicial to [Defendant]" and that "Plaintiff cannot show—as required by Fed. R. Civ. P. 37(c)(1)—that this failure to provide a calculation of damages was substantially justified or harmless." (*Id.* at 4.) Defendant concludes that Plaintiff "should not be permitted to present evidence of un-computed, un-disclosed damages at trial." (*Id.* at 5.)

In response, Plaintiff first argues that to the extent Defendant's motion is for a directed verdict under Rule 50, it is procedurally improper. (Doc. 106 at 1.) Plaintiff argues that "Rule 50(a) permits judgment as a matter of law only after a party has been fully heard on an issue during a jury trial." (*Id.*) And Plaintiff argues that "[c]ourts routinely reject attempts to convert discovery disputes into dispositive motions absent a developed trial record or a showing of willful nondisclosure and incurable prejudice." (*Id.* at 2 n.2.) Second, Plaintiff argues that to the extent Defendant's motion was brought under Rules 26 and 37, "Defendant's argument rests on the incorrect premise that Plaintiff failed to adequately disclose his damages theories." (*Id.* at 2.) Plaintiff argues that he "disclosed, among other things: [1] A total damages estimate of at least $3,729,088; [2] That damages

---

[1] Defendant clarifies that the relief it seeks "would not apply to other elements of damages, such as emotional distress damages." (*Id.*)

include emotional distress, front pay, and back pay; [3] That economic damages would be 'more accurately calculated by an economic damages expert' and supplemented; [4] A methodology for front pay based on salary differential over time; [5] A computation of back pay based on wage differentials; [6] Separate categories of non-economic damages, including emotional distress." (*Id.* at 2-3, brackets added.)  Plaintiff contends that "Defendant's disagreement with the precision or magnitude of Plaintiff's damages calculations does not constitute nondisclosure, surprise, or concealment." (*Id.* at 3.)  Third, Plaintiff contends that Defendant's assertion "that because certain evidence—such as Plaintiff's expert report and tax records—was described as 'a piece of the puzzle,' Plaintiff's disclosures were therefore inadequate . . . misapprehends both the governing procedural rules and the Court's prior evidentiary rulings." (*Id.*)  Plaintiff argues that Rule 37(c)(1) sanctions are only appropriate if Rule 26 is violated and that "[e]ven assuming arguendo any alleged deficiency, exclusion is not automatic" because "[t]he Court must evaluate prejudice, surprise, and whether lesser remedies could cure any issue." (*Id.* at 4.)  Fourth, Plaintiff argues that "[t]o the extent Defendant seeks to limit or exclude Plaintiff's damages evidence at trial, such arguments are governed by the Pretrial Order under Rule 16(e)" and Defendant has not made a showing that the Final Pretrial Order should be amended to "prevent manifest injustice." (*Id.*)

In reply, Defendant reiterates that Plaintiff "had the obligation to disclose a computation of his monetary damages, and to identify the evidence that supported that computation" and argues that "Plaintiff admits that he did not do that and/or fails to show that he did." (Doc. 109 at 1.)  Specifically, Defendant argues that "Plaintiff admits that his damages disclosures were to be 'more accurately calculated by an economics expert' and 'supplemented,' neither of which occurred" and that "Plaintiff even argues that even now— days before trial—that his damages disclosures remain subject to supplementation" but "[t]he time to supplement is long past." (*Id.*)  Defendant also reiterates that Stokes "expressly did *not* calculate damages," that the Court "agreed that Mr. Stokes's analysis did not represent damages," and that Plaintiff "*never provided a computation of his actual*

*damages*" and instead relied on "the number derived from Mr. Stokes's report." (*Id.* at 2.) Next, Defendant defends its request for a directed verdict, arguing that its "reference to Rule 50 . . . is merely a recognition that if the Court grants a sanction under Rule 37 for lack of disclosure, the issue of economic damages will be excluded, and thus 'fully heard,' such that the Court could foreclose Plaintiff's claim for economic damages." (*Id.*) Defendant then argues that Plaintiff's response "argues only in generalities, never specifically pointing to the disclosure required" and that Plaintiff's "categories of damages" do not satisfy Rule 26(a). (*Id.* at 3.) As for prejudice, Defendant argues "[t]here can be no greater prejudice than going into trial blind as to the basis for Plaintiff's $3.7m damages claim." (*Id.*) Defendant also argues that it "identified this shortfall in Plaintiff's disclosures approximately one year ago in the summary judgment and *Daubert*-motion briefing" and that "[t]he Court, in ruling on those motions, permitted Plaintiff an opportunity to disclose how Mr. Stoke's analysis factors into an actual computation of economic damages," yet Plaintiff never did so. (*Id.*) In response to Plaintiff's arguments regarding Rule 16 and the Final Pretrial Order, Defendant argues that Plaintiff "notes no portion of Rule 16, or the Court's form pre-trial order, that would have encompassed Plaintiff's lack of disclosure" and that "the Court's pre-trial orders state the opposite." (*Id.*) As for Plaintiff's argument that Defendant should have brought its motion under Rule 37, Defendant argues that is what it did. (*Id.* at 3-4.)

II.    <u>Directed Verdict</u>

To the extent Defendant's motion seeks a directed verdict, that request is denied without prejudice. The first and most obvious problem with this request is its premature timing. Under Rule 50(a)(1), a court may grant judgment as a matter of law on an issue "[i]f a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." Thus, "[t]he earliest time a Rule 50(a) motion can be filed is after the party against whom the issue would be resolved has been fully heard," and "[t]he [C]ourt cannot resolve an issue or enter judgment as a matter of law ('JMOL') against a party before that

party has been 'fully heard' on the issue." 1 Gensler, Federal Rules of Civil Procedure, Rules and Commentary, § 50:15-50:16 (June 2025 update). Although "[t]he law in this area is not fully clear" across jurisdictions, "the Ninth Circuit has held that a party may not move for JMOL before the presentation of any evidence." *Id.* § 50:16. *See also McSherry v. City of Long Beach*, 423 F.3d 1015, 1021 (9th Cir. 2005) ("We hold that the district court may not grant a motion filed under Rule 50 prior to the presentation of any evidence in a case. The district court cannot grant such a motion because the non-moving party must be afforded the opportunity to present evidence, and the court must evaluate that evidence in order to grant a motion under Rule 50.") (footnote omitted). For these reasons, any request for JMOL under Rule 50 is, at a minimum, premature.

With that said, Plaintiff is advised that Defendant has raised significant questions regarding the sufficiency of the evidence underlying his claims for front and back pay, and the Court anticipates conducting a careful evaluation of that issue at an appropriate future stage of this case. As for when that stage will be, the Court takes this opportunity to provide a related point of clarification. The parties' motion papers refer to Plaintiff's requests for front and back pay as claims for "economic damages." (Doc. 103 at 2; Doc. 106 at 3 n.3.) This is also how Defendant described those claims in its motion to exclude Stokes' testimony (Doc. 56 at 1 ["[Defendant] moves to preclude Michael Stokes . . . from offering any opinion testimony during trial regarding Plaintiff's claimed economic damages."])—a description the Court uncritically adopted in the Daubert *Order* (Doc. 68 at 10)—and how the parties continue to describe those claims in the Final Pretrial Order. (Doc. 99 at 3 [identifying one of the contested issues of fact and law as "[t]he nature and extent of Plaintiff's damages, including lost wages, benefits and other economic losses"].) Presumably for this reason, the parties' joint proposed verdict form calls for the jury to decide the amount of "Back Pay" and "Front Pay." (Doc. 90 at 7.)

On reflection, these descriptions are imprecise. In the Ninth Circuit, "there is no right to have a jury determine the appropriate amount of back pay under Title VII . . . . Instead, back pay remains an equitable remedy to be awarded by the district court in its

discretion." *Lutz v. Glendale Union High Sch.*, 403 F.3d 1061, 1069 (9th Cir. 2005). *See also* 9th Cir. Model Jury Instruction 5.2, comment ("In Title VII and ADA cases, the court, not the jury, determines the amount of back pay as a discretionary, equitable remedy."). Similarly, front pay—which "is simply money awarded for lost compensation during the period between judgment and reinstatement or in lieu of reinstatement," *Pollard v. E.I. du Pont de Nemours & Co.*, 532 U.S. 843, 846 (2001)—"is an equitable award within the purview of the court, not the jury," *Traxler v. Multnomah Cnty.*, 596 F.3d 1007, 1012 (9th Cir. 2010) (applying this principle in FMLA case). *See also Thomas v. iStar Fin., Inc.*, 508 F. Supp. 2d 252, 258 (S.D.N.Y. 2007) ("Under Title VII, front pay is unquestionably an equitable remedy to be decided by the Court. . . .  Under Title VII, whether and in what amount to issue front pay is left to the sound discretion of the Court."); *Melone v. Paul Evert's RV Country, Inc.*, 2011 WL 6780877, *5 (D. Nev. 2011) ("The decision to award back pay or front pay under Title VII . . . is an equitable one. . . .  [T]he district court has wide discretion in fashioning appropriate Title VII remedies . . . ."). Thus, for purposes of Plaintiff's Title VII claims in this case, the Court will be responsible for determining the amount, if any, of front and back pay to award. *See generally Caudle v. Bristow Optical Co., Inc.*, 224 F.3d 1014, 1020 (9th Cir. 2000), *as amended on denial of reh'g* (Nov. 2, 2000) ("Title VII of the Civil Rights Act of 1964 permits courts to grant equitable remedies to employees who have been impermissibly discriminated against by employers with fifteen or more employees.  The relevant remedies include reinstatement and awards of back pay and front pay.") (citation omitted); 9th Cir. Model Jury Instruction 10, introductory comment ("Although the Supreme Court has declined to address definitively whether a Title VII plaintiff has a right to a jury trial on the issue of back pay, the Ninth Circuit has held that there is no such right.  The holding in *Pollard* that front pay is excluded from the statutory limits because it is an equitable remedy suggests that similarly there is no entitlement to a jury trial for that remedy.  The court, however, may consider submitting questions of front and back pay to a jury for advisory findings under Rule 39(c) of the Federal Rules of Civil Procedure.") (cleaned up).

Additionally, although Plaintiff has asserted claims under 42 U.S.C. § 1981 in addition to claims under Title VII, it appears that front and back pay are also equitable remedies in a § 1981 action. *See, e.g., Williams v. Owens-Illinois, Inc.*, 665 F.2d 918, 929 (9th Cir. 1982), *opinion modified on denial of reh'g*, 1982 WL 308873 (9th Cir. 1982) (holding, in relation to the plaintiffs' § 1981 claims, that "the only requested remedy other than injunctive relief which was before the court was back pay" and that this "relief . . . was properly viewed as either equitable or as a legal remedy incidental to an equitable cause of action and accordingly not sufficient to create a right to jury trial") (footnote omitted); *McMillian v. Aberdeen Sch. Dist.*, 2025 WL 2529928, *2 (5th Cir. 2025) ("Title VII and Section 1981 provide for equitable relief, such as reinstatement or front pay or any other equitable relief as the court deems appropriate.") (cleaned up); *Barbour v. Merrill*, 48 F.3d 1270, 1277-78 (D.C. Cir. 1995) (noting that "under section 1981, as under Title VII, a district court has wide discretion to award equitable relief" and analyzing equitable awards of front and back pay in action brought solely pursuant to § 1981); *Moore v. Sun Oil Co. of Pa.*, 636 F.2d 154, 156 (6th Cir. 1980) (concluding that back pay is an equitable remedy in an action under § 1981); 3d Cir. Model Jury Instruction 6.4.3, comment ("Back pay awards are available against an employer under Section 1981. . . . An award of back pay is an equitable remedy; thus there is no right to jury trial on a claim for back pay. An instruction on back pay is nonetheless included because the parties or the court may wish to empanel an advisory jury—especially given the fact that in most cases the plaintiff will be seeking compensatory damages and the jury will be sitting anyway."); 3d Cir. Model Jury Instruction 6.4.4, comment (same as for front pay claims in a § 1981 action).

Given this backdrop, it appears the jury in this case will only have an advisory role in determining the size of any award of front and back pay. *See, e.g., Teutscher v. Woodson*, 835 F.3d 936, 957 n.16 (9th Cir. 2016) ("[T]he question of equitable front pay could perhaps have been tried to the district court with an advisory jury as long as that choice was clear to the parties in advance, so that the district court would be guided by the jury's non-binding front pay finding should reinstatement prove infeasible."); *Traxler*, 596

F.3d at 1013 ("[F]ront pay is an equitable remedy.  A trial court, sitting in equity, may nevertheless employ an advisory jury.  The ultimate decision, however, rests with the court."); *Grant v. Nexstar Media Grp., Inc.*, 2025 WL 3188404, *4 (M.D. Pa. 2025) (in a case involving "discrimination and retaliation claims under the ADA, Title VII, and the PFIRA," explaining that "the determination of damages in this case involves a shared role where the jury will determine whether plaintiff is entitled to compensatory and punitive damages, while the determination of whether plaintiff is entitled to back pay and front pay will be reserved for the court") (citation and footnote omitted); *Walton v. Tronox LLC*, 2024 WL 4028714, *1 (N.D. Miss. 2024) ("Back pay and front pay are equitable remedies that may be determined by the Court or submitted to the jury for advisory determinations.").  And if the Court, rather than the jury, will ultimately be responsible for deciding the issues of front and back pay, the very concept of seeking JMOL on those claims under Rule 50 is a non-starter.  "Federal Rule of Civil Procedure 50 applies only in trials in which the jury is the ultimate finder of fact.  It does not apply in bench trials or trials in which the jury is advisory only."  2 Gensler, *supra*, § 50.6 (footnotes omitted).  This provides an additional reason for denying Defendant's pretrial request for a directed verdict.

III.    <u>Sanctions</u>

Defendant also seeks to "exclude evidence intended to prove Plaintiff's economic damages" as a sanction under Rule 37(c)(1) based on Plaintiff's alleged failure to comply with Rule 26(a)(1)(A)(iii).  (Doc. 103 at 2.)

A.    **Legal Standard**

1.    <u>Rule 26(a)(1)(A)(iii)</u>

Rule 26(a)(1)(A)(iii) requires the disclosure of "a computation of each category of damages claimed by the disclosing party—who must also make available for inspection and copying . . . the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based."  "The purposes of the initial disclosure requirements are important and clear.  Parties should be put on notice of the

factual and legal contentions of the opposing party, and the initial disclosure requirements eliminate surprise and trial by ambush." *Silvagni v. Wal-Mart Stores, Inc.*, 320 F.R.D. 237, 240 (D. Nev. 2017) (citing *Ollier v. Sweetwater Union High Sch. Dist.*, 768 F.3d 843, 862-63 (9th Cir. 2014)). "The damages computation in particular further enables the defendant to understand the contours of its liability exposure and, by extension, to make informed decisions regarding settlement." *Id.*

"Rule 26(a)(1)(A)(iii) contemplates damages computation analysis and explanation." *Grouse River Outfitters, Ltd. v. Oracle Corp.*, 848 F. App'x 238, 244 (9th Cir. 2021). A "computation of each category of damages, as used in Rule 26, contemplates some analysis beyond merely setting forth a lump sum amount for a claimed element of damages." *Cleveland v. Behemoth*, 2022 WL 5264494, *2 (S.D. Cal. 2022) (cleaned up). However, "Rule 26 does not elaborate on the level of specificity required in the initial damages disclosure." *City & Cnty. of San Francisco v. Tutor-Saliba Corp.*, 218 F.R.D. 219, 220 (N.D. Cal. 2003). Nor is the meaning of "category" of damages clear. *Id.* at 221 (citation omitted). Courts have held that the "level of specificity for the damages computation varies depending on the stage of the litigation and the claims at issue." *Silvagni*, 320 F.R.D. at 240. "[T]he initial damages computation is generally viewed as merely a preliminary assessment that is subject to revision." *Id.* at 241. "A precise damages computation may not be possible until the plaintiff obtains some discovery, . . . and, in some cases, obtains expert analysis." *Id.* "While future expert analysis does not relieve a plaintiff of providing the information reasonably available to her regarding her damages computation, a precise method of calculation need not be disclosed initially to the extent it is properly the subject of expert testimony that will be provided through future expert reports." *Id.* Although "[a] 'preliminary assessment' may suffice at the outset of a case, . . . it will not suffice as the case progresses." *Id. See also LT Game Int'l Ltd. v. Shuffle Master, Inc.*, 2013 WL 321659, *6 (D. Nev. 2013) ("A computation of damages may not need to be detailed early in the case before all relevant documents or evidence has been obtained by the plaintiff. As discovery proceeds, however, the plaintiff is required to

- 10 -

supplement its initial damages computation to reflect the information obtained through discovery."); Fed. R. Civ. P. 26(e) ("A party who has made a disclosure under Rule 26(a) . . . must supplement or correct its disclosure . . . in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing.").

### 2.      Rule 37(c)(1)

"When a defendant believes the plaintiff failed to comply with the requirements for disclosing a damages computation, the defendant may move for sanctions under Rule 37(c).  The party requesting sanctions bears the initial burden of establishing that the opposing party failed to comply with the disclosure requirements established in Rule 26." *Silvagni*, 320 F.R.D. at 241.

If the movant makes this showing, "[t]he party facing sanctions bears the burden of proving that its failure to disclose the required information was substantially justified or is harmless."  *R&R Sails, Inc. v. Ins. Co. of Penn.*, 673 F.3d 1240, 1246 (9th Cir. 2012). "[C]ourts have identified several factors to guide the determination of whether substantial justification and harmlessness exist, including (1) prejudice or surprise to the party against whom the evidence is offered; (2) the ability of that party to cure the prejudice; (3) the likelihood of disruption of trial; and (4) bad faith or willfulness in not timely disclosing the evidence." *Liberty Ins. Corp. v. Brodeur*, 41 F.4th 1185, 1192 (9th Cir. 2022) (cleaned up).

"Rule 37(c)(1) is an 'automatic' sanction that prohibits the use of improperly disclosed evidence," such that "litigants can escape the 'harshness' of exclusion only if they prove that the discovery violations were substantially justified or harmless." *Merchant v. Corizon Health, Inc.*, 993 F.3d 733, 740 (9th Cir. 2021) (citation omitted). Nevertheless, "[t]he automatic nature of the rule's application does not mean that a district court must exclude evidence that runs afoul of Rule 26(a) or (e). . . .  Rather, the rule is automatic in the sense that a district court may properly impose an exclusion sanction

where a noncompliant party has failed to show that the discovery violation was either substantially justified or harmless." *Id.* (cleaned up). The "party facing sanctions under [Rule 37(c)(1)] bears the burden of showing that a sanction other than exclusion is better suited to the circumstances." *Id.* at 741. "[A] noncompliant party must 'avail himself of the opportunity to seek a lesser sanction' by formally requesting one from the district court." *Id.* (citation omitted).

"In practice, exclusion sanctions are generally limited to 'extreme situations.'" *Silvagni*, 320 F.R.D. at 243 (quoting *Tutor-Saliba*, 218 F.R.D. at 220-21). "Absent a showing of bad faith or other misconduct, courts are leery of imposing the harsh sanction of exclusion absent a significant possibility of prejudice due to the untimeliness of the disclosure. Hence, courts are more likely to exclude damages evidence when a party first discloses its computation of damages shortly before trial or substantially after discovery has closed." *Id.* (cleaned up). "Even in cases involving very belated disclosures of damages computations, the court should consider the degree of willfulness or bad faith by the plaintiff in failing to make the disclosure, the availability of lesser sanctions and other orders to prevent prejudice to the other party caused by the late disclosures." *Id.* (cleaned up).

B.    **Analysis**

Although Plaintiff has not covered himself in glory when it comes to the clarity of his damages-related disclosures and arguments in this case, the relief that Defendant now seeks—a Rule 37 sanction, imposed on the eve of trial, that would result in the wholesale exclusion of Plaintiff's claims for front and back pay—is unwarranted.

As background, Plaintiff last supplemented his Rule 26 initial disclosures on September 20, 2024. (Doc. 105 at 9.) The section entitled "Plaintiff's Computation of Damages" provides:

> [Plaintiff] seek [sic] monetary damages, punitive damages and attorneys' fees, based upon the above facts. [Plaintiff] suffered emotional distress as a result of his abusive work environment. [Plaintiff] had to *live in* a hostile work environment and was treated like a second class citizen by Defendant.

[Plaintiff] seeks at least $3,729,088,00 [sic] for his claims.  This amount is based on his emotional distress and front pay and back pay based on what [Plaintiff] earned at [Defendant] and the difference between [Plaintiff's] pay at [Defendant] and what he currently earns to be more accurately calculated by an economic damages expert and supplemented.

[Plaintiff[ will ask a jury to award him at least $500,000.00 for the stress and anxiety he experienced including humiliation, insomnia and lack of interest in leaving his home.  This will be based upon the testimony of [Plaintiff] and his wife, Brandi Ruiz.

[Plaintiff] will ask a jury to award him front pay of 94k dollars per year until he reaches age 63 which is to date 19 years from now.  The 94k is the difference between [Plaintiff's] salary of 95k and Witte's salary of 189K over 19 years which amounts to $1,786,000.00 for Count 1 Demotion.

[Plaintiff] backpay to date for his wrongful termination is the $7,916,66 [sic] per month subtracting which amounts to about $60,000.00 based on Defendant's expert report.  Punitive damages will be requested in the amount of 100k based on profit claimed by [Defendant] in its answers to discovery.

For Count II, [Plaintiff] will request at least 500K as explained above and front pay of $3,727,000.00 as calculated in the economic damages report and back pay as calculated above.

For Count III, Hostile Work environment, [Plaintiff] will request $500k as explained for his emotional distress above.

For Count IV Title VII demotion [Plaintiff] will request front pay and back pay as explained about [sic] and 50K in punitive damages.

For Count V Title VII wrongful termination, [Plaintiff] will request front pay and back pay as calculated above and 50K in punitive damages.

Both the Ninth Circuit and the Arizona Court of Appeals have upheld large non-economic damages verdicts for plaintiffs, stating that a jury is given wide discretion to determine what sum may be appropriate or fair compensation without any mathematical formula or requirement of precision for such calculations. *Harper v. City of Los Angeles*, 533 F. 3d 1010, 1029-1030 (9th Cir., 2008) (headnotes 28-31). *Passantino v. Johnson & Johnson Consumer Products, Inc.*, 212 F. 3d 493 (9th Cir., 2000) (headnote 37). *Felder v. Physiotherapy Associates*, 215 Ariz. 154, 158 P. 3d 877 (App., 2007) (headnotes 3-7)

As set forth supra, such non-economic emotional distress/mental suffering

- 13 -

and economic damages cannot be quantified with mathematical certainty. [Plaintiff] believes and calculates that a fair sum to compensate him would be at least $3,729,078.00 and punitive damages based on [Defendant's] profits during the years that it employed [Plaintiff] in an amount to be determined by a jury.

(*Id.* at 8-9.)

At summary judgment, Defendant characterized these disclosures as "incomprehensible" and then argued that "Plaintiff lacks admissible evidence to support these claims" because "[t]he large dollar claims, for instance, are purportedly based on Plaintiff's expert report," which "is the subject of [Defendant's] concurrently filed *Daubert* motion," "[a]nd even if admissible, the report, by the expert's own admission, is not a calculation of damages, but merely a projection of potential earnings with no consideration of mitigation or other relevant considerations." (Doc. 55 at 4-5, 10-12.) The Court attempted to address this argument in the *Daubert* Order, which explained that Stokes "purport[ed] to calculate the net present value, $3,729,078, of the wages and benefits [Plaintiff] would have earned had he remained employed by [Defendant] until his retirement" and held that "[a]though this figure likely overstates [Plaintiff's] economic damages, because it makes no attempt to account for offsets and mitigation, it is still at least one piece of the puzzle" and is thus relevant and not subject to exclusion under Rule 403. (Doc. 68 at 10-11.)[2]

---

[2] In hindsight, the Court realizes that it never formally ruled on Defendant's damages-related summary judgment arguments. The Court did not address those arguments in the summary judgment order (Doc. 67) because it anticipated resolving them in its forthcoming ruling on Defendant's motion to exclude Stokes (Doc. 68), but it then inadvertently failed to do so. The Court therefore takes this opportunity to clarify that Defendant was not entitled to summary judgment based on its damages-related arguments. As an initial matter, although Defendant's summary judgment motion complained about the "incomprehensible" nature of Plaintiff's damages computations and disclosures, Defendant's motion and reply included only a passing reference to Rule 26, did not cite Rule 37, and did not develop any argument as to why a perceived disclosure violation under Rule 26 would provide a basis for granting summary judgment under Rule 56. (Doc. 55 at 10-11; Doc. 62 at 9.) Next, to the extent Defendant's motion argued that "Plaintiff lacks admissible evidence to support these claims," Defendant's argument was undeveloped and only imprecisely challenged Plaintiff's "large dollar claims." (Doc. 55 at 11-12.) Finally, to the extent Defendant's motion argued that "Plaintiff simply lacks damages" because "[w]hat evidence Plaintiff himself produced indicates that he earns substantially more now than when [Defendant] employed him" (*id.* at 11), although Defendant sought to establish

In the pending motion, Defendant places heavy emphasis on this passage from the *Daubert* Order. According to Defendant, the issuance of the *Daubert* Order should have prompted Plaintiff to update his damages computations to supply the offset calculation that Stokes failed to provide. Defendant contends that because Plaintiff failed to do so, Plaintiff's computations regarding his claims for front and back pay should be deemed deficient under Rule 26 and excluded under Rule 37.

The first step in the analysis is determining whether Plaintiff complied with Rule 26(a)(1)(A)(iii). On the one hand, although both sides seem to assume that the "damages" that must be computed under Rule 26(a)(1)(A)(iii) include claims for front and back pay, it is unclear whether that assumption is correct. As discussed in detail in the preceding section of this order, front and back pay are equitable remedies under Title VII and § 1981, not categories of legal damages. At least one court has concluded that "claims for back pay, reinstatement, and front pay (but only if plaintiff is not reinstated), are not claims for damages for which plaintiff is required to provide a 'computation' under the Civil Rules" because "they are not even claims that will be presented to a jury." *Grayson v. Witt*, 2008 WL 11344736, *5 (E.D. Ky. 2008).

On the other hand, if Rule 26(a)(1)(A)(iii)'s computation requirement does apply in this context, Defendant is likely correct that Plaintiff's front and back pay computations were (and remain) inadequate.[3] Putting aside the fact that the computations appear to be internally inconsistent in certain respects—it is not clear, for example, why the maximum

---

this point by proffering a one-page letter from an accounting firm identifying Plaintiff's "gross income" in 2022 and 2023 as well as the amount Plaintiff was currently "grossing" (*id.* at 68), Plaintiff then submitted controverting evidence that was sufficient to create a triable issue of fact. (Doc. 61 at 2 ["[Plaintiff] has sufficiently alleged damages based on . . . lost income because [Plaintiff] has shown that he makes less than what he made at [Defendant]."]; Doc. 61-1 at 7 ¶ 19 [Plaintiff's declaration: "While [Defendant] claims I made more money at my own business, this allegation is based on my gross receipts. My adjusted gross income according to my 2023 [sic] was 48,009.00 which is much less than I earned at [Defendant]."].)

[3] Defendant's motion only seeks exclusion of Plaintiff's "economic damages" and not "other elements of damages, such as emotional distress damages." (Doc. 103 at 2.) Thus, the Court does not analyze the adequacy of Plaintiff's other damages computations and disclosures.

listed sum is \$3,729,088 in the disclosures but \$3,729,078 in Stokes's report; why the front pay figure for Count II, \$3,727,000, is nearly identical to what is listed as the "economic damages report and back pay" figure, \$3,729,088; and whether the latter figure is inclusive of the requested sum of \$500,000 for emotional distress damages—Plaintiff's disclosures acknowledged that although his claim for front and back pay was based in part on the sum "calculated in the economic damages report," his claim would ultimately be for "the difference between [his] pay at [Defendant] and what he currently earns to be more accurately calculated by an economic damages expert and supplemented." (Doc. 105 at 8-9.)  In other words, Plaintiff acknowledged that the \$3,729,078 sum calculated by Stokes (Doc. 56 at 59) would need to be reduced to account for his actual post-termination earnings[4] and promised to provide supplementation on that topic.  However, Plaintiff never lived up to that promise—no further supplementation was provided.  It is difficult to see how Plaintiff's computation regarding his request for front and back pay could be deemed sufficient under these circumstances, as it failed to live up to its own definition of what was required.

Nevertheless, even assuming Plaintiff's computation was inadequate due to Plaintiff's failure to provide the promised supplementation on the topic of offset/mitigation, the violation was harmless.  First, although the promised supplementation never occurred, Plaintiff's disclosures did identify the methodology by which the future offset calculation would be performed—namely, by subtracting "[Plaintiff's] pay at [Defendant] and what he currently earns." (Doc. 105 at 8.)  Plaintiff's failure to perform that supplemental calculation was harmless because it appears Defendant has the information necessary to perform it.  In *Maharaj v. Calif. Bank & Tr.*, 288 F.R.D. 458 (E.D. Cal. 2013), the defendant moved *in limine* to preclude "the Plaintiff from offering evidence of damages categories, damages computations, and damages amounts

---

[4]   Plaintiff made similar representations in his response to the motion to exclude Stokes.  (Doc. 59 at 3 ["Along with other evidence, such as . . . Plaintiff's tax returns of what Plaintiff actually made, Michael Stokes' testimony of what Plaintiff would have earned is relevant and will be helpful to the jury to determine Plaintiff's damages."].)

that were not timely disclosed to the Defendant under Rules 26(a)(1)(A), 26(e), and 37(c)(1)." *Id.* at 462 (cleaned up).  The plaintiff's initial disclosures provided:

> Plaintiff's economic damages to date amount to the total value of all wages and benefits that Plaintiff would have earned but for Defendant having terminated Plaintiff's employment less any mitigation income earned by Plaintiff since the date of termination.  Plaintiff estimates wage loss, not including benefits, as of this date at $40,012.00.
>
> Plaintiff is also seeking all recoverable future economic damages which are not subject to exact valuation at this time.
>
> Plaintiff cannot currently calculate an exact value associated with Plaintiff's claim for past and future general damages, and for exemplary damages, as those amounts will ultimately be determined by the trier of fact.

*Id.* at 463.  The Court held that "[a]lthough Plaintiff's disclosures do not provide an analysis of her computation of past or future economic damages, Plaintiff has shown that her failure to disclose that analysis is harmless since the information on which these damages are calculated is already in Defendant's possession." *Id.*

Here, Defendant has not argued that it lacks the information needed to calculate the required offset calculation.  To the contrary, it appears that one of Defendant's experts (Evans), who is listed as a potential trial witness, performed that very calculation.  (Doc. 99 at 6, 28-29.)  At any rate, although the burden rests on Plaintiff to show harmlessness, *R&R Sails, Inc*, 673 F.3d at 1246, the record indicates that Defendant possesses information relevant to Plaintiff's post-termination earnings.  For example, the Final Pretrial Order suggests that Defendant possesses Plaintiff's tax returns and Plaintiff's deposition testimony, both of which address mitigation and his current earnings.  (Doc. 99 at 28-29.)  Defendant's motion to exclude Stokes also suggested that Defendant possesses this information—it simply faulted Stokes for failing to consider that information in forming his opinions.  (Doc. 56 at 6 ["Mr. Stokes's analysis was based on Plaintiff's 2022 income, as that was the last full year during which he worked for [Defendant].  Plaintiff, however, earned significant income in 2023, starting just two weeks after he no longer worked for [Defendant], and as of August 2024, was grossing over $13,000.00 per month 'to ensure there will not be a drop in income.'"].)

Second, to the extent the challenged computation is inadequate because it does not include a calculated offset for mitigation, the violation is harmless for another reason—it shows that Defendant has less exposure than was disclosed.  Courts have declined to impose Rule 37 exclusion sanctions under analogous circumstances.  *Zurich Am. Ins. Co. v. Coeur Rochester, Inc.*, 720 F. Supp. 2d 1223, 1229 (D. Nev. 2010) ("Coeur does not contend that there was any justification for the omission, it was simply an error.  It appears, however, that the error was entirely harmless.  Coeur informed Zurich of the missing fourth box of the spreadsheet during discovery, and provided Zurich with the corrected spreadsheet. . . .  The information in the fourth box of the spreadsheet does not describe an additional damages claim, but rather Coeur's attempt to mitigate its damages, which reduced Coeur's claim against Zurich by $1,456,353.  As such, even if Coeur's actions with regard to the spreadsheet were to constitute a violation of Rule 26—which they do not—sanctions pursuant to Rule 37 would be inappropriate.").

Third, Defendant's certifications in the Final Pretrial Order tend, at the very least, to undercut its claims of prejudice.  The parties filed their joint proposed pretrial order on April 30, 2026.  (Doc. 94.)  On May 6, 2026, the Court approved and adopted the Final Pretrial Order.  (Doc. 99.)  Both the proposed and final versions were signed by Defendant.  (Doc. 94 at 79; Doc. 99 at 79.)  Section 13 of the Final Pretrial Order, titled "Certifications," provides:

> The undersigned counsel for each of the parties in this action do hereby certify and acknowledge the following; . . . The parties have made all of the disclosures required by the Federal Rules of Civil Procedure (unless otherwise previously order to the contrary).

(Doc. 94 at 78; Doc 99 at 78.)  In *Finato v. Fink*, 803 F. App'x 84 (9th Cir. 2020), the Ninth Circuit held that the "district court did not err by denying Finato's motion for Rule 37 sanctions" based on Fink's alleged failure to compute damages under Rule 26 because, among other reasons, "Finato signed the final pretrial order, which explicitly stated that '[a]ll disclosures under [Rule] 26(a)(3) have been made.'"  *Id.* at 87-88.[5]

---

[5]    Plaintiff makes a related argument in his response brief, noting that the disclosure

Fourth, "[e]ven in cases involving very belated disclosures of damages computations, the court should consider the degree of willfulness or bad faith by the plaintiff in failing to make the disclosure, the availability of lesser sanctions and other orders to prevent prejudice to the other party caused by the late disclosures." *Silvagni*, 320 F.R.D. at 243. *See also Merchant*, 993 F.3d at 740-41 ("[I]f a Rule 37(c)(1) sanction will 'deal[] a fatal flow' to a party's claim, a district court must consider (1) 'whether the claimed noncompliance involved willfulness, fault, or bad faith' and (2) 'the availability of lesser sanctions.'") (citation omitted). Defendant has not alleged, and no party has addressed, whether the alleged Rule 26 violation was willful or in bad faith. Based on an independent review of the record, the Court has no reason to believe that is the case. Moreover, to the extent Defendant's motion seeks to have *all* "evidence intended to prove Plaintiff's economic damages" excluded from trial (Doc. 103 at 2; Doc. 109 at 4 [requesting "a directed verdict/sanction barring Plaintiff from presenting evidence of economic damages"]), including Stokes's opinions, that would be a drastic sanction that is inconsistent with the *Daubert* Order. The more tailored approach is to permit Defendant to object at trial to any mitigation-related testimony or evidence offered by Plaintiff that goes beyond what Plaintiff previously disclosed (such as, for example, if Stokes attempts to offer a new mitigation-related theory at trial that was not disclosed in his report). *Wendt v. Host Int'l, Inc.*, 125 F.3d 806, 814 (9th Cir. 1997) (court must consider availability of less drastic sanctions).

Fifth, and finally, if (as discussed in Section II, *supra*) Plaintiff's claims for front and back pay constitute claims for equitable remedies that will ultimately be decided by the Court, this qualifies as yet another reason why any violation was harmless—the Court can simply take any omissions in Plaintiff's disclosures into account when deciding what to award. *Cf. Jung v. Potter*, 2008 WL 2620905, *4 (D. Ariz. 2008) (post-trial order, issued following a jury trial in an employment discrimination action that resulted in an award of

---

and sanction arguments Defendant seeks to advance here were not preserved in the Final Pretrial Order. (Doc. 106 at 4.)

compensatory damages to the plaintiff, concluding that the plaintiff was not entitled to the full requested amount of front pay: "Plaintiff has not provided any details about the benefits he currently receives.  As stated above, a plaintiff bears the burden of providing the data required to calculate a reasonably certain front pay award.  Without any data regarding current benefits, the Court is unable to make a determination of reasonable front pay after an offset of current benefits.  Because it is Plaintiff's burden to provide such data, the Court is not inclined to award additional front pay . . . .") (citation omitted).

Accordingly,

**IT IS ORDERED** that Defendant's motion for a directed verdict/sanctions (Doc. 103) is **denied**.

Dated this 18th day of May, 2026.

_____
Dominic W. Lanza
United States District Judge

- 20 -