**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Michael L Ruiz, | No. CV-23-02090-PHX-DWL |
| Plaintiff, | **ORDER** |
| v. | |
| Magellan Financial & Insurance Services, | |
| Defendant. | |

In this action, Plaintiff Michael Ruiz ("Plaintiff") alleged that his former employer, Defendant Magellan Financial & Insurance Services ("Defendant"), demoted and then terminated him on the basis of his race and/or national origin and also subjected him to a hostile work environment, in violation of Title VII and/or 42 U.S.C. § 1981. After most of Plaintiff's claims survived summary judgment (Doc. 67), the case culminated in a seven-day jury trial. The jury deliberated for only an hour or so before rejecting all of Plaintiff's claims. (Doc. 128 [deliberations began at 4:26 p.m. and ended at 4:31 p.m. on day 6]; Doc. 129 [deliberations resumed at 8:32 a.m. on day 7 and a verdict was reached by 9:35 a.m.].) Afterward, in the course of denying Plaintiff's oral motion for a new trial, the Court noted that it "did not view this to be a particularly close case." (Doc. 150 at 14.)

Now pending before the Court is Defendant's application for $496,879.44 in attorneys' fees and costs. (Doc. 151.) The motion is fully briefed (Docs. 155, 156) and neither side requested oral argument. For the reasons that follow, the motion is denied, although Plaintiff's counsel will be required to show cause why sanctions and/or discipline should not be imposed against her due to the presence of false (and seemingly AI-

hallucinated) quotations in Plaintiff's response brief.

As Defendant acknowledges, an award of attorneys' fees to a prevailing defendant in an employment discrimination action is "not the norm." (Doc. 151 at 5.)  The relevant statutory provisions "give a court the discretion to award attorney's fees to a prevailing defendant in certain civil rights lawsuits if the court finds that the plaintiff's action is 'frivolous, unreasonable, or without foundation.'"  *Miller v. Los Angeles Cnty. Bd. of Educ.*, 827 F.2d 617, 619 (9th Cir. 1987) (quoting *Christiansburg Garment Co. v. Equal Employment Opportunity Commission*, 434 U.S. 412, 421 (1978)).  As the Ninth Circuit has explained:

> Congress and the courts have long recognized that creating broad compliance with our civil rights laws, a policy of the "highest priority," requires that private individuals bring their civil rights grievances to court.  Even when unsuccessful, such suits provide an important outlet for resolving grievances in an orderly manner and achieving non-violent resolutions of highly controversial, and often inflammatory, disputes.  Guaranteeing individuals an opportunity to be heard in court instead of leaving them only with self-help as the means of remedying perceived injustices creates respect for law and ameliorates the injury that individuals feel when they believe that they have been wronged because society views them as inferior.  Our system of awarding attorneys fees in civil rights cases is in large part dedicated "to encouraging individuals injured by . . . discrimination to seek judicial relief."
>
> In accordance with this objective, courts are permitted to award attorneys fees to prevailing *plaintiffs* as a matter of course, but are permitted to award attorneys fees to prevailing *defendants* . . . only "in exceptional circumstances."

*Harris v. Maricopa Cnty. Superior Ct.*, 631 F.3d 963, 971 (9th Cir. 2011) (cleaned up).

In its motion, Defendant emphasizes the weakness of Plaintiff's damages-related evidence and disclosures; Plaintiff's surprising announcement on the eve of trial that he would not be calling his damages expert; the lack of written corroboration for Plaintiff's testimony that he had been subjected to verbal slurs; the "moving target" nature of Plaintiff's demotion claim; Plaintiff's attempt to "backdoor substantive exhibits not disclosed in the pre-trial order, as purported impeachment exhibits"; Plaintiff's attempt to

articulate a new theory of liability in response to Defendant's motion for directed verdict; and Plaintiff's attempt to articulate new damages calculations for the first time during closing argument. (Doc. 151 at 1-3.) Defendant also contends that "the record demonstrated a clear non-discriminatory basis for [Plaintiff's] discharge"; that "Plaintiff knew before he filed this lawsuit that the reason he was terminated was because his relationship with Mr. Mortach deteriorated, not because of his race or national origin"; and that Plaintiff's claims were more fundamentally unreasonable in light of "the evidence show[ing] a broadly diverse workforce at Magellan" and the fact that "several Hispanic employees testified regarding their success in achieving promotions and large salaries at Magellan." (*Id.* at 6.) Defendant acknowledges that Plaintiff's claims largely survived summary judgment but cites a variety of cases from outside the Ninth Circuit, including *Arnold v. Burger King Corp.*, 719 F.2d 63 (4th Cir. 1983), *Hutchinson v. Staton*, 994 F.2d 1076 (4th Cir. 1993), and *Perry v. S.Z. Rest. Corp.*, 45 F. Supp. 2d 272 (S.D.N.Y. 1999), in support of the proposition that fees may still be awarded in this circumstance. (*Id.* at 5-8 & n.1.)

Defendant's fee request presents a somewhat close call. On the one hand, many of Plaintiff's litigation tactics and strategies were concerning. Areas of concern include the "moving target" nature of some of Plaintiff's liability and damages theories;[1] the inadequacy of Plaintiff's damages-related evidence and disclosures;[2] Plaintiff's misuse of motions *in limine*;[3] Plaintiff's submission of legally erroneous and/or internally

---

[1]    In addition to the examples cited in Defendant's motion, the Court notes that the summary judgment order discussed "the lack of clarity regarding [Plaintiff's] theory of his first demotion" and concluded that it was "impermissible for [Plaintiff] to attempt to raise [a new theory] in response to [Defendant's] summary judgment motion . . . . Indeed, even as of oral argument, the contours of this new demotion claim appear to be changing. That is not how civil litigation is supposed to work." (Doc. 67 at 14-16.)

[2]    S*ee generally* Doc. 111 at 6 ("Plaintiff is advised that Defendant has raised significant questions regarding the sufficiency of the evidence underlying his claims for front and back pay."); *id.* at 12 ("Plaintiff has not covered himself in glory when it comes to the clarity of his damages-related disclosures and arguments in this case.").

[3]    Plaintiff filed five motions *in limine*. (Docs. 73-77.) In the course of denying all five motions, the Court noted that some were incoherent and that many sought to exclude broad categories of unspecified evidence, even though the Court had specifically advised against filing motions *in limine* seeking such relief. (Doc. 71 at 3-4, cleaned up ["[M]otions in limine are often utilized improperly . . . [and] should rarely seek to exclude broad

- 3 -

inconsistent (and in several instances duplicative) proposed jury instructions;[4] Plaintiff's improper attempt to use important documents as "impeachment" exhibits rather than properly disclosing and marking them as trial exhibits;[5] and Plaintiff's repeated violations of the Rules of Evidence when it came to the form and content of questions posed to witnesses at trial.

In addition, Plaintiff's demotion and termination claims were quite weak. After Plaintiff briefly quit working for Defendant in 2021, Defendant's CEO, Bryon Rice, personally agreed to rehire him and then assigned him to work with one of Defendant's most important clients (if not the most important client), only for that client to express extreme dissatisfaction with Plaintiff's work. The fact that Plaintiff was rehired and selected to work with that client is, standing alone, difficult to reconcile with the notion that Defendant was somehow biased against Plaintiff due to his race and national origin. In any event, that client's subsequent expressions of dissatisfaction with Plaintiff's work provide an obvious legitimate, non-discriminatory explanation for the challenged employment actions in this case.[6]

categories of evidence, as the court is almost always better situated to rule on evidentiary issues in their factual context during trial. . . .  The Court thus encourages the parties to give careful thought to whether issues that might be raised in a motion in limine would be better raised in a trial memorandum."].)

[4]   To be fair, Defendant also bears fault for the significant problems in the parties' joint proposed jury instructions.

[5]   As discussed in Defendant's trial brief on this issue: "It is hard to imagine a more prejudicial cloak-and-dagger tactic than Plaintiff's attempted use of the Document. Plaintiff identified the exhibits he intended to use at trial in the pretrial order.  Defendant relied on that identification in arguing at opening arguments to the jury about what they would see, and what they would not see, what they would hear, and what they would not hear.  Again, Plaintiff *produced this document*.  He did so in 2024.  He had every opportunity to identify the Document as a trial exhibit.  He obviously had the obligation to do so, given its purported substantive impact on the case.  He did not do so, according to his counsel, because he simply did not find it until after trial had begun.  Then, once he found it, he did not come to the parties and the Court to openly move to modify the pretrial order, as would be proper given the entirely substantive nature of the Document.  Instead, Plaintiff held the Document back, refused to provide a copy on the morning of trial, and tried to spring it on Mr. Rice as an ambush."  (Doc. 123 at 4-5.)

[6]   In the summary judgment order, the Court acknowledged that Defendant had proffered a legitimate, non-discriminatory reason for the challenged employment actions but denied summary judgment due to Plaintiff's submission of evidence—albeit uncorroborated evidence—that Rice had made derogatory race-based comments close in time to the challenged employment actions and the rule in the "Ninth Circuit . . . that a

On the other hand, this is not a case where Plaintiff's claims were thrown out before trial due to a lack of evidence or the lack of a viable legal theory. The sort of employment discrimination claims that Plaintiff asserted in this case—unlawful demotion, unlawful termination, and hostile work environment—are routine, straightforward claims, and Plaintiff was able to come forward with enough evidence to survive Defendant's motions for summary judgment and for a directed verdict. True, that evidence largely took the form of Plaintiff's own uncorroborated claims regarding verbal slurs that Rice had allegedly directed toward him—claims the jury apparently rejected—but it is still significant for fee-shifting purposes that the evidence was sufficient to survive summary judgment and a directed verdict. *See, e.g.*, *Miller*, 827 F.2d at 620 ("A court should be particularly chary about awarding attorney's fees where the court is unable to conclude that the action may be dismissed without proceeding to trial."); *Brooks v. Cook*, 938 F.2d 1048, 1055 (9th Cir. 1991) ("Brooks argues that here, where this court overturned a directed verdict against him on essentially the same facts, the case cannot be deemed frivolous. This reasoning appears persuasive. In [a previous case] upholding the denial of attorneys' fees to the defendant, we noted that the district court had denied the defendant's motions to dismiss and for summary judgment. These rulings suggest that [the plaintiff's] claims were not without merit.") (cleaned up).[7]

Additionally, although Plaintiff's demotion and termination claims were weak for the reasons discussed above, Plaintiff's hostile work environment claim was not marred by the same sort of internal contradictions. If the jury had accepted Plaintiff's testimony regarding the alleged derogatory statements made by Rice, it is easy to see how the presence of those statements would have resulted in the creation of a hostile work

---

single discriminatory comment by a plaintiff's supervisor or decisionmaker is sufficient to preclude summary judgment for the employer." (Doc. 67 at 22-23, cleaned up.)

[7] To be clear, the Court does not construe *Miller* and *Brooks* as categorically foreclosing a fee award to the prevailing defendant in an employment discrimination case simply because the plaintiff's claims survived summary judgment and went to trial. Nevertheless, to the extent Defendant seeks to rely on cases from outside the Ninth Circuit that may follow a less stringent standard for awarding fees in this circumstance, the Court must follow Ninth Circuit law.

environment.  But Defendant has not attempted to differentiate between Plaintiff's claims in its fee request.  *Cf. Harris*, 631 F.3d at 971-72 ("[A] defendant is entitled only to the amount of attorneys fees attributable exclusively to a plaintiff's frivolous claims. . . .  Fees may be awarded only for frivolous claims, and a defendant bears the burden of establishing that the fees for which it is asking are in fact incurred solely by virtue of the need to defend against those frivolous claims. . . .  Accordingly, a defendant must demonstrate that the work for which it asserts that it is entitled to fees would not have been performed but for the inclusion of the frivolous claims in the complaint.") (cleaned up).

Given this backdrop, the Court cannot say that "the plaintiff's *action* [was] 'frivolous, unreasonable, or without foundation,'" *Miller*, 827 F.2d at 619 (emphasis added), in the manner required to warrant a fee-shifting award or that this case otherwise qualifies as the sort of "exceptional circumstance[]," *Harris*, 631 F.3d at 971, that would justify a fee-shifting award.  Even though Plaintiff unnecessarily complicated the litigation in a variety of ways, Plaintiff ultimately presented at least one claim to the jury that turned on a classic credibility question—whether the jury believed Plaintiff or Rice regarding the alleged verbal statements by Rice.  And although the jury apparently resolved that credibility question in Rice's favor, "it is important that a district court resist the understandable temptation to engage in *post hoc* reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation."  *C.W. v. Capistrano Unified Sch. Dist.*, 784 F.3d 1237, 1245 (9th Cir. 2015) (citation omitted).  The Ninth Circuit has cautioned that "[t]he strict nature of the *Christiansburg* standard is premised on the need to avoid undercutting Congress' policy of promoting vigorous prosecution of civil rights violations under Title VII and § 1983."  *Miller*, 827 F.2d at 619.  That policy would be undermined by awarding fees simply because the jury didn't believe Plaintiff's trial testimony regarding the alleged verbal statements. *Cf. Csanyi v. Regis Corp.*, 2007 WL 433556, *1 (D. Ariz. 2007) ("Defendants argue that Plaintiff's action was frivolous, unreasonable, or without foundation because Plaintiff presented no evidence of retaliation, presented no evidence she was employed by

Regis Corporation and presented no evidence that similarly situated, non-Bolivian employees were treated differently.  Defendants also note that the Court, in its Findings of Fact and Conclusions of Law, found Plaintiff's testimony not credible.  Despite Defendants' arguments, the Court is unwilling to find that Plaintiff's action was frivolous, unreasonable, or without foundation considering that the Court previously denied Defendants' summary judgment motion.  Also, Defendants' arguments and the Court's previous denial of summary judgment indicate that Plaintiff merely failed to present evidence at trial sufficient to justify relief.") (citations omitted).

The final matter to be addressed is the presence of false quotations in Plaintiff's response brief.  Plaintiff's brief cites *Saman v. Robbins*, 173 F.3d 1150 (9th Cir. 1999), and includes the following purported quotation from that case: "survived summary judgment . . . were not frivolous."  (Doc. 155 at 3.)  Although *Saman* is a real case, the quoted language does not appear anywhere in *Saman*.  Plaintiff's brief also cites *Mitchell v. Off. of Los Angeles Cnty. Superintendent of Schs.*, 805 F.2d 844 (9th Cir. 1986), and includes a purported quotation from *Mitchell* that courts must be "especially careful" not to discourage civil rights claims.  (Doc. 155 at 7.)  Once again, although *Mitchell* is a real case, the quoted language does not appear anywhere in *Mitchell*.

In its reply brief, Defendant argues that "[w]hy [Plaintiff] . . . invents quotations that do not exist in the case—again, whether because of large language model 'hallucination,' gross inadvertence, or deliberate misrepresentation—is unknown.  But [Defendant] should not have to pay counsel to respond to fabricated, non-existent quotations, nor should the Court have to address this type of lack of candor in representations made to the opposing part[y] and to this Court."  (Doc. 156 at 8.)  The Court agrees with that sentiment and notes that the false quotations are particularly distressing given Plaintiff's counsel's record of other improper litigation conduct in this case (which is detailed above) and in past cases in the District of Arizona.  *See generally Siegel v. Dignity Health*, 2021 WL 5359586, *1 (9th Cir. 2021) ("[T]he record supports the district court's imposition of sanctions given Tate's continued violations of court orders and inability to comply with required procedures. . . .

Tate's arguments to the contrary misconstrue the standard under § 1927 and downplay her conduct in the district court.  Thus, the district court did not abuse its discretion when it imposed sanctions under § 1927."); *In the Matter of a Member of the State Bar of Arizona, Elizabeth Diane Tate, Bar No. 032659*, 2022 WL 2837897, *1 (Az. Disp. Comm. 2022) ("Ms. Tate admits violating Rule 42, Ariz. R. Sup. Ct., specifically ER 1.1 (competence), ER 1.3 (diligence), ER 3.1 (meritorious claims and contentions), ER 3.4(c) (fairness to opposing party and counsel), ER 5.3 (responsibilities regarding non-lawyers), ER 5.5 (unauthorized practice of law), and ER 8.4(d) (conduct prejudicial to the administration of justice).  As a sanction, the parties agree to a reprimand, one year of probation, and payment of costs to the State Bar.  Ms. Tate represented clients in a civil matter in federal court.  She failed to provide competent representation by consistently demonstrating a failure to understand relevant legal doctrines or procedures and was negligent in determining whether she was competent to handle the matter.").

Although the specific conduct being addressed here—the inclusion of false (perhaps AI-hallucinated) case quotations in a response brief—does not justify a nearly half-million-dollar fee-shifting award, it still must be addressed.  *Malkeet Lnu v. Blanche*, 177 F.4th 1014, 1020 (9th Cir. 2026) ("We issue this disciplinary order . . . as a warning to the members of this Court's bar: be aware of the risks of overreliance on generative AI, read everything cited in a court filing—whether drafted by generative AI or not—and disclose quickly and transparently generative AI hallucinations that are inadvertently included in court filings."); *id.* at 1027 ("Sethi also violated these rules when he attributed quotations to opinions in which the quoted language does not appear. . . .  It makes no difference that the quotation does in fact appear in another case or that the misquoted language is supported generally by [the cited case].").[8]

---

[8]    Whether the false quotations were the result of using AI "is ultimately irrelevant" because "[a]ttorneys do not need cutting-edge technology to fabricate citations and make demonstrably false and unsupported statements. . . . If an attorney files a brief with cases or quotations that do not exist, or completely misrepresents what a real authority stands for, it generally does not matter if he pulled the hallucination or misrepresentation from the output of an artificial intelligence tool or from his own natural intelligence." *Lnu*, 177 F.4th at 1025-26.

The conduct at issue here potentially implicates, and may trigger sanctions or discipline under, a variety of different procedural and ethical rules. *Id.* at 1024 ("Sethi and Rounds violated multiple rules of appellate procedure and professional conduct. Sethi did so when he signed and filed briefs in this Court with nonexistent cases, misattributed quotations, and gross misrepresentations of real cases. . . . We detail each violation in turn.") (citations omitted). For example, under Rule 11(b)(2) of the Federal Rules of Civil Procedure, an attorney who files a brief certifies that the legal contentions therein are "warranted by existing law." "[T]he duties imposed by Rule 11 require that attorneys read, and thereby confirm the existence and validity of, the legal authorities on which they rely." *Buchanan v. Vuori, Inc.*, 2025 WL 3089517, *1 (N.D. Cal. 2025) (citation omitted). When an attorney includes "at least one false quotation that the Court can nowhere identify in the cited case, nor any other case," the misrepresentation that the case contains the quotation may violate Rule 11(b). *Doe 1 v. Lai*, 2026 WL 1004947, *1 (C.D. Cal. 2026).

"On its own, the court may order an attorney, law firm, or party to show cause why conduct specifically described in the order has not violated Rule 11(b)," and "[i]f after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation." Fed. R. Civ. P. 11(c)(1), (c)(3). "In that circumstance—unlike the situation in which an opposing party moves for Rule 11 sanctions—there is no safe harbor in the Rule allowing lawyers to correct or withdraw their challenged filings. In light of this important distinction, sua sponte sanctions will ordinarily be imposed only in situations that are akin to a contempt of court." *United Nat. Ins. Co. v. R&D Latex Corp.*, 242 F.3d 1102, 1116 (9th Cir. 2001) (cleaned up).[9] "When monetary sanctions or a contempt citation are criminal in nature," "the full

---

[9] Some have suggested this heightened standard renders Rule 11(c)(3) ineffective when it comes to addressing AI hallucinations. *See, e.g.,* Jessica R. Gunder, *Rule 11 Is No Match for Generative AI*, 27 Stan. Tech. L. Rev. 308, 348 (2024) ("[T]he ill-informed use of generative AI technology will typically evade Rule 11 sanctions. This conduct is sloppy. It violates an attorney's ethical responsibilities. But whether it is in bad faith or akin to contempt is a different measure, and one that is likely not present in most cases."). On the other hand, due to the recent explosion in "news stories, CLE presentations, scholarly articles, and judicial entreaties" on this topic, others have suggested that "[i]f it were ever

panoply of procedural protections that are normally reserved for defendants charged with a criminal offense" "may be required," but "[i]n contrast, civil sanctions may be imposed so long as the court provides adequate notice and an opportunity to be heard." *Lasar v. Ford Motor Co.*, 399 F.3d 1101, 1110 (9th Cir. 2005).

Separate and apart from Rule 11, "[a]ny court which has the power to admit attorneys to practice may also sanction them for unprofessional conduct. The nature of a disciplinary proceeding is neither civil nor criminal, but an investigation into the conduct of the lawyer-respondent. At a minimum, however, an attorney subject to discipline is entitled to procedural due process, including notice and an opportunity to be heard." *Standing Comm. on Discipline of U.S. Dist. Ct. for S. Dist. of California v. Ross*, 735 F.2d 1168, 1170 (9th Cir. 1984) (citations omitted). "[U]pon a finding or acknowledgement that the lawyer has engaged in professional misconduct," the Court has the power to sanction attorneys, commensurate with the severity of their misconduct, with disbarment, suspension, reprimand/censure ("public discipline which declares the conduct of the lawyer improper, but does not limit the lawyer's right to practice"), admonition ("private reprimand"), and probation. ABA Standards for Imposing Lawyer Sanctions (hereinafter "ABA Standards"), Part B.[10] *See also In re Girardi*, 611 F.3d 1027, 1035 (9th Cir. 2010) ("In assessing the appropriateness of a particular disciplinary sanction, this court may consider, although it is not bound by, the ABA's Standards for Imposing Lawyer Sanctions, which were promulgated to aid enforcement of the ABA's Model Rules of Professional Conduct."). "Under these standards, a court should generally consider: (a) the duty violated; (b) the lawyer's mental state; (c) the actual or potential injury caused by the lawyer's misconduct; and (d) the existence of aggravating or mitigating factors." *In re Girardi*, 611 F.3d at 1036. *See, e.g.*, *McDonough v. Bidwill*, 2025 WL 1556974, *8-11 (D. Ariz. 2025).

---

an excuse to plead ignorance of the risks of using generative AI to draft a brief without verifying its output, it is certainly no longer so.*" Fletcher v. Experian Info. Solutions, Inc.*, 168 F.4th 231, 234-35 (5th Cir. 2026).

[10]    https://cdn.ca9.uscourts.gov/datastore/library/2013/02/26/Girardi_sanctions.pdf.

Under the Arizona Rules of Professional Conduct in the Rules of the Supreme Court of the State of Arizona, which apply to attorneys who practice before this Court pursuant to LRCiv 83.2(e), "[a] lawyer shall act with reasonable diligence . . . in representing a client." A.R.S. Sup. Ct. Rules, Rule 42, Rules of Prof. Conduct, ER 1.3. Furthermore, a lawyer "shall provide competent representation," which requires "the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation." A.R.S. Sup. Ct. Rules, Rule 42, Rules of Prof. Conduct, ER 1.1. "A competent and diligent attorney cannot decline to vet citations, in a brief he signs, for substantive validity—in other words, to read the cited authorities and ensure that they are on point." *Lnu*, 177 F.4th at 1029. A lawyer also may not make a legal argument without "a good faith basis in law." A.R.S. Sup. Ct. Rules, Rule 42, Rules of Prof. Conduct, ER 3.1. It appears that Plaintiff's counsel violated these ethical rules. *Lnu*, 177 F.4th at 1026 ("The California Rules of Professional Conduct impose duties of competence and diligence. These duties apply to attorneys who prepare filings with generative AI and review such filings. At a bare minimum, these duties require lawyers to review the output of generative AI for fabrications and basic accuracy: Are these cases and quotations real?").

A lawyer also has a duty of candor toward the tribunal and "shall not knowingly . . . make a false statement of fact *or law* to a tribunal." A.R.S. Sup. Ct. Rules, Rule 42, Rules of Prof. Conduct, ER 3.3(a)(1) (emphasis added). "[T]he court need not find squarely intentional conduct to impose serious discipline . . . for misrepresentations made to the court." *In re Girardi*, 611 F.3d at 1037-38. "This duty could be implicated by the unchecked use of generative tools that are known to be unreliable." *Lnu*, 177 F.4th at 1028 n.14.

Plaintiff's counsel is on notice that any of the sanctions mentioned in this order may be assessed against her, including monetary sanctions and/or suspension or a lesser sanction.

…

…

Accordingly,

**IT IS ORDERED** that:

1.    Defendant's motion for attorneys' fees (Doc. 151) is **denied**.

2.    Within 14 days from the date of this Order, Plaintiff's counsel shall show cause, in a memorandum not to exceed 10 pages, why she should not be sanctioned or disciplined for including false quotations in the response to Defendant's motion for attorneys' fees.

Dated this 8th day of July, 2026.

Dominic W. Lanza
United States District Judge

- 12 -