**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

|  |  |
|---|---|
| Michael L Ruiz, | No. CV-23-02090-PHX-DWL |
| Plaintiff, | **ORDER** |
| v. | |
| Magellan Financial & Insurance Services, | |
| Defendant. | |

In this action, Plaintiff Michael Ruiz ("Plaintiff") alleged that his former employer, Defendant Magellan Financial & Insurance Services ("Defendant"), demoted and then terminated him on the basis of his race and/or national origin and also subjected him to a hostile work environment, in violation of Title VII and/or 42 U.S.C. § 1981. The case culminated in a seven-day jury trial, but the jury deliberated for only an hour or so before rejecting all of Plaintiff's claims. (*See generally* Doc. 163.)

On May 29, 2026, following the return of the defense verdict, the Court entered judgment in Defendant's favor. (Doc. 138.) Fourteen days later, on June 12, 2026, Defendant filed an "application for costs." (Doc. 152.) That application seeks an overall cost award of $24,123.82. (*Id.* at 3-6.) Enclosed as attachments are various receipts and invoices. (*Id.* at 8-57.) The application also asserts that "[a] Bill of Costs on form AO 133 is concurrently filed with the Court." (*Id.* at 1.) However, no such form was filed on June 12, 2026.

On June 22, 2026, Plaintiff filed an objection. (Doc. 154.) "Plaintiff objects on three independent grounds: (1) Defendant's submission is procedurally defective because

it was not filed on the required AO Form 133 and lacks the mandatory sworn verification, and because the 14-day filing deadline has now expired, this defect cannot be cured by refiling as of right; (2) numerous claimed costs are not recoverable as a matter of law, are unsupported and insufficiently documented, and/or exceed statutory limits; and (3) Plaintiff's significant financial hardship warrants the Court's exercise of its equitable discretion to deny or substantially reduce any award of costs." (*Id.* at 1.)

On June 29, 2026, Defendant filed (1) a bill of costs on AO Form 133, which seeks an award of $21,883.56 (Doc. 157); (2) a response to Plaintiff's objection (Doc. 158); and (3) a motion for an extension of time to file the AO Form 133 (Doc. 159). In both the response and the motion, Defendant argues that it intended to file the AO Form 133 on June 12, 2026, only to "inadvertently" fail to do so due to an " internal miscommunication," and that Plaintiff will suffer no prejudice from allowing the AO Form 133 to be belatedly filed because all of the necessary information was provided on June 12, 2026.

On July 3, 2026, Plaintiff filed (1) a motion to strike the AO Form 133 (Doc. 161); and (2) a response in opposition to Defendant's extension request (Doc. 160). In a nutshell, Plaintiff argues that Defendant "(1) missed the original deadline for filing its bill of costs; (2) filed an unverified cost application that did not comply with 28 U.S.C. § 1924; (3) moved for an extension of time based on a vague and unsubstantiated claim of 'internal miscommunication'; and (4) then filed the AO Form 133 without waiting for this Court to rule on that motion. At each step, [Defendant] has treated the applicable rules as optional and has placed the burden of correcting its noncompliance on Plaintiff and this Court. Granting [Defendant] the benefit of its unauthorized filing would reward this pattern and signal that deadlines and procedural requirements carry no real consequence for a defendant willing to proceed without court authorization. Striking the form is the appropriate response to preserve the integrity of the Court's docket management and to protect Plaintiff from the costs of litigating [Defendant's] procedural shortcuts." (Doc. 161 at 3-4.)

On July 9, 2026—one day after the Court issued an order requiring Plaintiff's

counsel to show cause why she should not be sanctioned for including false (and seemingly AI-hallucinated) quotations in a different filing (Doc. 163)—Plaintiff filed two notices of errata.  (Docs. 164, 165.)  The first discloses that Plaintiff incompletely quoted a statutory provision in his objection to the bill of costs.  (Doc. 164.)  The second discloses that Plaintiff misquoted the same statutory provision in his opposition to the extension request and that a typo was also present in one of the case citations in that brief.  (Doc. 165.)

On July 10, 2026, Defendant filed a reply in support of its extension request.  (Doc. 166.)  Among other things, Defendant accuses Plaintiff of mischaracterizing one of the cases cited in his opposition brief.  (*Id.* at 2 ["As has become a pattern that the Court's July 8, 2026 Ruling recognized, Plaintiff misrepresents case law to support his argument.  Plaintiff cites *Pincay v. Andrews*, 389 F.3d 853 (9th Cir. 2004) (en banc) for the [principle] that the Ninth Circuit has 'consistently held that attorney error or law firm administrative failures . . . do not constitute excusable neglect.'  *Pincay*, however, found a 'sophisticated law firm['s]' failure to timely file a notice of appeal *was* excusable neglect under the circumstances of that case."].)

On July 13, 2026, Plaintiff filed an objection to the AO Form 133 that Defendant filed on June 29, 2026.  (Doc. 167.)  "Plaintiff objects on two independent grounds.  First, [Defendant] claims specific line items are not recoverable under 28 U.S.C. § 1920 and 28 U.S.C. § 1821 and must be reduced or disallowed.  Second, and independently, this Court should exercise its discretion to deny costs in their entirety based on Plaintiff's indigency and the chilling effect a costs award of this magnitude would impose on civil rights litigation."  (*Id.*)

Having considered the parties' arguments, the Court grants Defendant's extension request, accepts the AO Form 133 that was filed on June 29, 2026, and denies Plaintiff's motion to strike.  The starting point for the analysis is LRCiv 54.1(a), which provides:

> A party entitled to costs shall, within fourteen (14) days after the entry of final judgment, unless time is extended under Rule 6(b), Federal Rules of Civil Procedure, file with the Clerk of Court and serve upon all parties, a bill of costs on a form provided by the Clerk.  This bill of costs shall include a

> memorandum of the costs and necessary disbursements, so itemized that the nature of each can be readily understood, and, where available, documentation of requested costs in all categories must be attached.  The bill of costs shall be verified by a person acquainted therewith.

*Id.*  Defendant did not comply with LRCiv 54.1(a) here because the otherwise timely and verified[1] fee application it submitted on June 12, 2026 failed to include an AO Form 133, i.e., "a form provided by the Clerk."

Despite this oversight, the Court concludes that Defendant should be allowed to recover its costs.  Rule 54(d)(1) provides that "costs—other than attorney's fees—should be allowed to the prevailing party" and does not say anything about the need to utilize AO Form 133 when seeking an award of costs.[2]  For this reason, some courts have concluded that even when—as in the District of Arizona—a local rule requires a prevailing party seeking to recover its costs to utilize AO Form 133, costs may be awarded despite non-compliance with that requirement.  *See, e.g.*, *Lyons v. Jefferson Cnty.*, 2023 WL 5627314, *1 (D. Mont. 2023) ("At the outset, the Court agrees with Jefferson County that Lyons's Bill of Costs fails to comply with L.R. 54.1 given that Lyons failed to submit her Bill of Costs on Form AO-133.  However, the Court is unwilling to reject Lyons's Bill of Costs on that basis."); *Int'l Union of Operating Eng'rs, Local #965 v. S. Crider Construction & Supply*, 2014 WL 2609824, *4 (C.D. Ill. 2014) ("Local Rule 54.1(B) requires Plaintiff to include Form AO-133 as a summary for the Bill of Costs.  Plaintiff did not file Form

---

[1]      Although Plaintiff asserts that Defendant's submission on June 12, 2026 was deficient because it "lacks the mandatory sworn verification" (Doc. 154 at 1) and "was not verified under penalty of perjury" (Doc. 160 at 1), Plaintiff ignores that Defendant included, in support of a separate motion for attorneys' fees also filed on June 12, 2026, a declaration from Bradley D. Weech, one of Defendant's attorneys in this action. (Doc. 151 at 20-22.)  In that declaration, Weech declared under penalty of perjury that Defendant had incurred $24,123.82 in taxable costs in this action and that "costs are appropriately awarded in this matter as set out in [Defendant's] . . . Bill of Costs." (*Id.* at 22 ¶¶ 11-12.)  This declaration is functionally the equivalent of the verification in AO Form 133.

[2]      Similarly, 28 U.S.C. § 1924 provides that "[b]efore any bill of costs is taxed, the party claiming any item of cost or disbursement shall attach thereto an affidavit, made by himself or by his duly authorized attorney or agent having knowledge of the facts, that such item is correct and has been necessarily incurred in the case and that the services for which fees have been charged were actually and necessarily performed."  Nothing in this statutory text suggests that the required "affidavit" must take the form of AO Form 133.

- 4 -

AO133, but did file an Affidavit itemizing Plaintiff's costs as Exhibit A to Plaintiff's Motion for Default Judgment. . . . [T]he Court will not require strict compliance with Local Rule 54.1(B) in this instance and will accept the Affidavit listing these two costs as a substitute for the Bill of Costs, Form AO-133.  Counsel is encouraged to use Form AO-133 in future cases in the Central District of Illinois."); *Lewis v. Heartland Inns of Am., L.L.C.*, 764 F. Supp. 2d 1037, 1047 (S.D. Iowa 2011) ("Local Rule 54(a)(1)(A) states that '[w]ithin 14 days after entry of judgment, a party entitled to recover costs must complete and file a form A.O. 133.  Failure to file the form by this deadline constitutes a waiver of the right to have costs taxed.'  Lewis did not file a Form A.O. 133.  Therefore, Defendants argue that the Court should deny Lewis any costs.  The Court does not agree.").

Additionally, even assuming that the submission of an AO Form 133 is a mandatory prerequisite to an award of taxable costs in the District of Arizona in light of LRCiv 54.1(a), Defendant has now submitted an AO Form 133, albeit belatedly and in a procedurally unorthodox manner.[3]  As Defendant correctly notes, the Court has discretion under Rule 6(b)(1)(B) to accept that late filing upon a showing of excusable neglect: "When an act may or must be done within a specified time, the court may, for good cause, extend the time . . . on motion made after the time has expired if the party failed to act because of excusable neglect."  Courts assessing whether neglect is "excusable" must consider four factors: "[1] the danger of prejudice to the [non-moving party], [2] the length of the delay and its potential impact on judicial proceedings, [3] the reason for the delay, including whether it was within the reasonable control of the movant, and [4] whether the movant acted in good faith." *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993).  Although the *Pioneer* factors are "not an exclusive list," they "provide a framework" for the determination. *Briones v. Riviera Hotel & Casino*, 116 F.3d 379, 381-

---

[3]     Instead of filing the AO Form 133 on the docket on June 29, 2026, Defendant should have lodged a proposed AO Form 133 as an attachment to its extension request.  By filing the AO Form 133 directly on the docket, Defendant effectively granted itself (or purported to grant itself) the same relief being sought in its extension request.  Nevertheless, because the Court has now concluded the extension request should be granted, it would put form over substance to strike the document filed on June 29, 2026.

82 (9th Cir. 1997). No single factor is determinative. *Id.* at 382 n.2. "[T]he determination is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission." *Pioneer*, 507 U.S. at 395.

The *Pioneer* factors counsel in favor of a finding of excusable neglect here. The delay at issue was short—Defendant should have filed the AO Form 133 on June 12, 2026 and ended up providing it 17 days later, on June 29, 2026—and Plaintiff suffered no cognizable prejudice from the late submission, particularly given that Defendant's other submissions on June 12, 2026 provided the necessary information, verification, and documentation. The absence of prejudice is underscored by the fact that Defendant's belatedly submitted AO Form 133 requests a smaller award of costs (Doc. 157 at 1 [$21,883.56]) than Defendant's original application for costs (Doc. 152 at 6 [$24,123.82]). Nor is there any conceivable bad-faith motive for the late submission—indeed, Defendant's filing on June 12, 2026 indicated that Defendant incorrectly believed it was submitting a completed AO Form 133 as an attachment. (Doc. 152 at 1 ["A Bill of Costs on form AO 133 is concurrently filed with the Court."].) All of this suggests that Defendant simply made an inadvertent, and perhaps careless, mistake in failing to submit the AO Form 133 on June 12, 2026, and excusable neglect encompasses "cases of negligence, carelessness and inadvertent mistake." *Bateman v. U.S. Postal Serv.*, 231 F.3d 1220, 1224 (9th Cir. 2000).

For these reasons, the Court will accept the AO Form 133 filed on June 29, 2026, which seeks an overall cost award of $21,883.56. (Doc. 157 at 1.) Additionally, to the extent Plaintiff has raised objections to "specific line items" (Doc. 167 at 2-5),[4] the Court will allow the Clerk of Court to resolve those objections in the first instance, as contemplated by Rule 54(d)(1): "The clerk may tax costs on 14 days' notice. On motion served within the next 7 days, the court may review the clerk's action." However, to the extent Plaintiff objects to the entry of any cost award due to his "indigency and the chilling

[4] As noted, Plaintiff has filed two sets of objections: first, Plaintiff filed objections to the bill of costs that Defendant filed on June 12, 2026 (Doc. 154); and second, Plaintiff filed objections to the AO Form 133 that Defendant filed on June 29, 2026 (Doc. 167). The Court will treat the latter set of objections as the operative version.

effect on civil rights litigation" (Doc. 167 at 5-7), that objection is overruled.

As noted, Rule 54(d)(1) provides that costs "should" be awarded to the prevailing party. "On its face, the rule creates a presumption in favor of awarding costs to a prevailing party, but vests in the district court discretion to refuse to award costs." *Escriba v. Foster Poultry Farms, Inc.*, 743 F.3d 1236, 1247 (9th Cir. 2014) (cleaned up). "Appropriate reasons for denying costs include: (1) the substantial public importance of the case, (2) the closeness and difficulty of the issues in the case, (3) the chilling effect on future similar actions, (4) the plaintiff's limited financial resources, and (5) the economic disparity between the parties. This is not an exhaustive list of good reasons for declining to award costs, but rather a starting point for analysis." *Id.* at 1247-48 (cleaned up). With that said, "a district court need not give affirmative reasons for awarding costs; instead, it need only find that the reasons for denying costs are not sufficiently persuasive to overcome the presumption in favor of an award. The presumption itself provides all the reason a court needs for awarding costs . . . ." *Save Our Valley v. Sound Transit*, 335 F.3d 932, 945 (9th Cir. 2003).

First, Plaintiff invokes his purported "indigency" as a reason for disallowing costs. (Doc. 167 at 4-5.) Plaintiff asserts that he is self-employed; that his "gross self-employment income was approximately $14,000 for the year 2023"; that he has filed extensions regarding later tax years; that his family recently incurred unspecific emergency room expenses; and that he was forced to liquidate his 401(k) account in December 2025. (*Id.*) In a supporting declaration, Plaintiff further avows that he is financially responsible for supporting his three children, including one child with special needs; that his wife earns approximately $21,000 per year; that he has approximately $10,000 in liquid assets and approximately $20,000 in credit card debt; that the expenses from the emergency room visit will be at least $1,750; and that he has already incurred over $12,000 in out-of-pocket expenses related to this litigation. (Doc. 167-1.)

Although many of Plaintiff's circumstances are sympathetic, his financial condition does not provide a basis for disallowing a cost award here. As an initial matter, and as

- 7 -

discussed in more detail in the order issued on July 8, 2026, it was a "somewhat close call" in this case whether Defendant should be allowed to recover not just its costs, but also nearly a half-million dollars in attorneys' fees.  (Doc. 163 at 3.)  Among other things, "many of Plaintiff's litigation tactics and strategies were concerning" and "Plaintiff's demotion and termination claims were quite weak."  (*Id.* at 3-4.)  Against this backdrop, the Court is particularly disinclined to disallow costs.

Plaintiff's arguments regarding his financial condition also fail for a more fundamental reason.  Plaintiff admitted at trial that he earns approximately $156,000 in annual revenue from his self-employment activities (Doc. 141 at 57-59) and the evidence at trial suggested that the $14,000 figure reflected in Plaintiff's filed 2023 tax return does not represent Plaintiff's true bottom-line annual compensation—instead, it was apparently the result of various deductions, including start-up costs that may not be expected to recur in future years (Doc. 147 at 100-02).  Defendant emphasized this point at trial, and again in its response to Plaintiff's first set of objections (Doc. 158 at 7-8 [arguing that the $14,000 figure simply represents "taxable business profits" and that Plaintiff "earns $156,000.00/year"]), yet Plaintiff made no effort to clarify it in his most recent submissions.  To the contrary, Plaintiff confusingly asserts that his "*gross* self-employment income was approximately $14,000 for the year 2023."  (Doc. 167 at 5, emphasis added.) Particularly under these circumstances, Plaintiff's financial condition does not provide a basis for overcoming the presumption in favor of allowing the prevailing party to recover its costs.  *Cf. Ames v. City of Tempe*, 2023 WL 3388817, *1 (D. Ariz. 2023) (rejecting plaintiff's request to deny costs based on his financial condition where "Plaintiff's declaration is bare-boned in nature and fails to address various aspects of Plaintiff's financial situation that would bear on his ability to satisfy a $6,720.55 award"); *Ames v. City of Tempe*, 2024 WL 1502267, *3 (9th Cir. 2024) ("Ames has failed to show that this is the rare occasion where severe injustice will result from an award of costs (such as the injustice that would result from an indigent plaintiff's being forced to pay tens of thousands of dollars of her alleged oppressor's legal costs) because he did not adequately show that

he would be rendered indigent if forced to pay.") (cleaned up).

Second, Plaintiff argues that "[i]mposing costs of nearly $22,000 on an individual civil rights plaintiff of limited means who brought good-faith claims to verdict sends a message that civil rights litigants risk financial ruin simply by exercising their right to a jury trial.  That chilling effect is precisely what the Ninth Circuit in *Escriba* identified." (Doc. 167 at 6.)  This argument is unavailing.  As discussed in more detail in the July 8, 2026 order, many of Plaintiff's claims were quite weak, Plaintiff's liability and damages theories were a moving target, Plaintiff engaged in a variety of concerning litigation tactics and strategies, and jury had little trouble rejecting Plaintiff's claims after barely an hour of deliberation.

Accordingly,

**IT IS ORDERED** that:

1.	Defendant's extension request (Doc. 159) is **granted**.

2.	Plaintiff's motion to strike (Doc. 161) is **denied**.

3.	The Clerk of Court shall, in due course, resolve Plaintiff's specific objections (Doc. 167 at 2-5) to Defendant's operative bill of costs (Doc. 157).

Dated this 14th day of July, 2026.

Dominic W. Lanza
United States District Judge