**WO**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Michael L Ruiz,<br>Plaintiff,<br>v.<br>Magellan Financial & Insurance Services,<br>Defendant. | No. CV-23-02090-PHX-DWL<br>**ORDER** |

On July 8, 2026, the Court issued an order to show cause ("OSC") requiring Plaintiff's counsel, Elizabeth Tate, to show cause why she should not be sanctioned or disciplined for including, in Plaintiff's response to Defendant's motion for attorneys' fees, two false quotations from Ninth Circuit cases. (Doc. 163.) After reviewing Ms. Tate's response (Doc. 171), the Court identified "three other briefs [that] contain similar errors" and ordered Ms. Tate to address those "additional examples [that] may also be attributable to the misuse of generative AI." (Doc. 172 at 3-5.) Ms. Tate has now done so. (Doc. 177.)

The first issue to be addressed is whether Ms. Tate's conduct violated any procedural or ethical rules. It did. Ms. Tate acknowledges that she filed three different briefs in this action that contained fake AI-generated quotations and filed a fourth brief that contained an inaccurate AI-generated case summary. (Doc. 171 at 1 ["The response to Defendant's application for attorneys' fees and costs that Ms. Tate filed on behalf of Plaintiff (Doc. 155) . . . contained two false quotations in the parenthetical portion of case citations. Ms. Tate acknowledges that representing the language as direct quotations from the cases was a mistake . . . ."]; Doc. 177 at 2 ["In the course of preparing this Motion, Ms.

Tate utilized ChatGPT to prepare the draft brief. ChatGPT cited the *Ansell v. Green Acres Contracting Co.*, 347 F.3d 515 (3d Cir. 2003) case to support the proposition that evidence of favorable treatment of the plaintiff or others does not preclude discrimination and may be excluded as irrelevant or misleading. . . . She now fully understands the need to be more precise in her review and analysis of the cases AI includes in a draft brief . . . ."]; Doc. 177 at 2-3 ["Ms. Tate also utilized ChatGPT to assist with the Brief on Impeachment. . . . While Ms. Tate confirmed the cases stood for the proposition for which she understood them to when she first prompted ChatGPT to include them in the draft brief, Ms. Tate mistakenly did not correct the misquotations from the *Antonakeas* or *Osazuwa* cases. She apologizes and accepts full responsibility for the quotation errors."]; Doc. 177 at 3 ["Ms. Tate's Opposition to Defendant's Motion to Extend Time to File Bill of Costs . . . suffered from the same issue: a false direct quotation."].) Although Ms. Tate argues these were "inadvertent oversights" (Doc. 177 at 3), that argument goes at most to the selection of the sanction (if any) to be imposed for the violation, not to whether a violation occurred. As discussed in more detail in the July 8, 2026 order, the conduct at issue here violated, at a minimum, Rule 11(b)(2) of the Federal Rules of Civil Procedure, ER 1.3's duty of reasonable diligence, ER 1.1's duty of competence, and ER 3.1's prohibition against advancing legal arguments that lack a good faith basis in the law. (Doc. 163 at 9-11.)

The remaining issue to be addressed is the identification of the appropriate sanction, if any. In her initial response, Ms. Tate argues that the Court should "forego sanctions or discipline" because she "has learned her lesson," "did not act in bad faith but understands that she cannot make this type of mistake again," and "knows that any subsequent transgressions likely would merit sanctions." (Doc. 171 at 7.) Ms. Tate also asserts that she "sought to use AI in a responsible manner," "has been honest and forthright about how the errors happened," "is embarrassed by her mistake and does not intend to let it happen ever again," "has suffered public humiliation as a result of her errors," and "also faces potential disciplinary action by the State Bar of Arizona." (*Id.* at 6.) Finally, Ms. Tate contrasts her conduct with the conduct that resulted in the imposition of sanctions in other

AI hallucination cases by emphasizing that those other cases "involved widescale false citations in multiple briefs followed by a lack of candor and affirmative misrepresentations to the court concerning the facts surrounding the citations," whereas this case involves "two citation errors." (*Id.* at 6.)

This latter assertion was, in part, the impetus for the Court's request for Ms. Tate to file a supplemental brief addressing the additional AI hallucinations it had detected in other briefs. In her supplemental brief, Ms. Tate "maintains her position that her conduct does not warrant sanctions or discipline." (Doc. 177 at 3.) Ms. Tate again asserts that she engaged in "genuine efforts to comply with her ethical obligations while utilizing generative AI," reiterates that she "accepts full responsibility for the misquotations contained in her filings and has unquestionably learned her lesson," and concludes that "her failures to fix the citations were embarrassing mistakes, and she will do her best to ensure no similar citation errors occur again." (*Id.* at 4.)

Although the Court appreciates Ms. Tate's honesty and expressions of contrition in response to the OSC and agrees that the conduct at issue here is not as egregious as some of the conduct that has warranted severe sanctions in other cases, the Court still concludes that some form of sanction is warranted. As discussed in more detail in the July 8, 2026 order, potential sanctions in this context include "disbarment, suspension, reprimand/censure ('public discipline which declares the conduct of the lawyer improper, but does not limit the lawyer's right to practice'), admonition ('private reprimand'), and probation," and the factors to consider when deciding which sanction to impose include "(a) the duty violated; (b) the lawyer's mental state; (c) the actual or potential injury caused by the lawyer's misconduct; and (d) the existence of aggravating or mitigating factors." (*Id.* at 10, cleaned up.) Here, Ms. Tate violated multiple duties; acted with a mental state that, if not intentional, was at least negligent and was arguably reckless; and created at least a potential for injury—had the Court uncritically accepted her fake quotations and inaccurate case citation, this could have led to legal errors that may have derailed the trajectory of the case. Finally, although Ms. Tate's responses to the OSC establish that this

case involves two important mitigating factors (remorse and the absence of a dishonest motive), the Court cannot ignore the presence of three aggravating factors (prior discipline, a pattern of misconduct/multiple offenses, and substantial experience).

When it comes to "discipline for misrepresentations to a court," the Ninth Circuit employs the ABA Standards, which depend "in large measure, on the lawyer's mental state":

> **6.12.** Suspension is generally appropriate when a lawyer knows that false statements or documents are being submitted to the court or that material information is improperly being withheld, and takes no remedial action, and causes injury or potential injury to a party to the legal proceeding, or causes an adverse or potentially adverse effect on the legal proceeding.
>
> **6.13.** Reprimand is generally appropriate when a lawyer is negligent either in determining whether statements or documents are false or in taking remedial action when material information is being withheld and causes injury or potential injury to a party to the legal proceeding, or causes an adverse or potentially adverse effect on the legal proceeding.
>
> **6.14.** Admonition is generally appropriate when a lawyer engages in an isolated instance of neglect in determining whether submitted statements or documents are false or in failing to disclose material information upon learning of its falsity, and causes little or no actual or potential injury to a party, or causes little or no adverse or potentially adverse effect on the legal proceeding.

*In re Girardi*, 611 F.3d 1027, 1038 (9th Cir. 2010).

As discussed above, this case involved conduct that was at least negligent (albeit not knowingly deceptive), was not isolated, created a potential for injury, and was accompanied by several aggravating factors. Under these circumstances, no sanction less severe than a reprimand would be appropriate.

…

…

…

…

…

…

…

Accordingly,

**IT IS ORDERED** that this order constitutes a formal public reprimand. Ms. Tate must report this discipline in any context in which she is required to report past instances of attorney discipline.

Dated this 24th day of August, 2026.

Dominic W. Lanza
United States District Judge